NETHERTON *v.* DAVIS.

5-2626                                                       355 S. W. 2d 609

Opinion delivered April 2, 1962.

*Sexton & Morgan,* by *Sam Sexton, Jr.,* for appellant.

*Lewis D. Jones,* for appellee.

PAUL WARD, Associate Justice. This litigation arises out of a dispute between International Brotherhood of Electrical Workers, Local No. 700 (hereafter referred to as "Union") on one side and Lee Davis and Jeff Davis, Partners, d/b/a J. S. Davis & Sons, Contractors (a prime contractor in this instance), and Albert T. Hough, d/b/a Acme Electric Company, on the other side. We will hereafter refer to the Davis partnership as "Davis", and to the Acme Company as "Hough". The Union is the appellant and Davis and Hough are the appellees.

Davis, the prime contractor, has a contract with Frez-N-Stor, Inc. to construct a cold storage building in Springdale, Arkansas. Under the contract Davis is to furnish all materials and labor. Hough, as a sub-contractor under Davis, is engaged in doing the electrical work on said building. Davis uses all union labor and has no labor dispute with Union.

On September 25, 1961 members of the Union (not employees of Davis or Hough) carrying signs which

read: "The electrical contractors on this job not paying prevailing wages", picketed the building construction site.

On September 29, 1961 Davis and Hough filed in chancery court a petition containing in substance the following material allegations—omitting facts above set out: (a) Hough operates an "open shop" (employs some non-union labor) in the performance of his contract as he has a right to do under the "Freedom to Work" Amendment; (b) Davis employs union laborers but they refuse to cross the picket line set up by the Union, and the picket banners are untrue because all electrical employees on the job are receiving union wages; that they (Davis and Hough) are therefore unable to perform their contracts; (c) The pickets have harassed and threatened petitioners' employees and interfered with their work, all of which amounts to an unlawful effort to force petitioners to enter into an unlawful contract to hire only union labor in violation of the "Freedom to Work" Amendment; and, (d) petitioners are suffering and will suffer irreparable damage for which they have no adequate remedy at law. Petitioners' prayer was for a temporary injunction to restrain Union from picketing. On the same day the petition was filed the court ordered notice to be given to Union and set October 4 for a hearing.

On the above mentioned date Union filed an answer which, in addition to certain denials, contains, in substance, the following allegations: (a) Hough, over a long period of time, has failed to pay his employees union wages and by subterfuge has tried to conceal that fact; (b) at one time, when Hough was being picketed, he agreed to pay union wages and the pickets were withdrawn, but he failed to comply with that agreement and is not now paying his employees union wages "on the said job".

After hearing testimony by several witnesses for appellee and one witness for appellant the trial court made the following findings:

(a) "The finding of the court on the evidence is, that the announced purpose of the picket to call to the attention of the world, in the exercise of their constitutional right of free speech, the fact or the alleged fact that Mr. Hough was not paying prevailing wages was true at the time the picketing commenced, but was not true on last Thursday, September 28th, and is not true today."

(b) "The court finds for that reason and on those facts that there exists no reason or purpose for the continuation of the picketing at this time."

(c) The effect of the picketing as it relates to Davis is "to deprive him of his property without due process of law. . . ."

Then the court entered an order restraining Union from maintaining pickets at the construction site, pending further orders. Union now appeals from the trial court's order.

*One.* The first question we consider is whether we should dismiss the appeal because the subject matter of the litigation is moot. We understand from the briefs and statements of counsel that Hough's job at the Frez-N-Stor location (where the picketing was being conducted) has been completed and that there is no longer any reason for Union to picket that place. In appellees' brief there appears this statement:

"We realize that the issues in this particular case are moot, however the problem involved herein is one of critical importance for all citizens of our state, and we feel that if the court holds that the union is to be permitted this encroachment upon the rights of innocent persons for the purpose of effectuating their labor objective, then there is no retreat left."

We have concluded that the question involved in this litigation is of great importance to the general public and that it should be decided even though the subject matter is moot. In the recent case of *Moorman* v. *Taylor*, 227

Ark. 180, 297 S. W. 2d 103, where an election contest was involved, we said: "Although Perry was defeated by the Democratic nominee for the office, it is not our practice to dismiss such cases as moot, for the public interest demands that substantial questions concerning the election laws be set at rest." In the case of *Cain* v. *CarlLee,* 171 Ark. 155, 283 S. W. 365, this Court, in an election contest, decided the controversial issue even though the subject matter was moot. The reason given for so doing was : "The questions involved on this appeal were and are of practical importance to the public." That decision was based on *Wilson* v. *Thompson,* 56 Ark. 110, 19 S. W. 321, where the Court construed an act of the legislature prohibiting the sale of intoxicating liquors within three miles of a church or school. See also: *Brown* v. *Anderson,* 210 Ark. 970, 198 S. W. 2d 188. It is true that all the above cited cases, except the *Wilson* case, involved election contests, but they were all decided on the principle of public interest. The same principle applies with equal force to the case under consideration. This Court takes direct and judicial knowledge of the frequency of litigation over labor disputes, and there can be no doubt of its importance to the public and the general welfare. In this connection it is also noted that, in labor disputes, it is not unusual for the subject matter to become moot before the legal principles involved can be settled by the courts. So, as in the *Moorman* case, we elect not to dismiss the appeal because the subject matter is moot.

*Two. The Issue.* It is necessary to clearly define the exact issue with which we are here concerned. Both the trial court and the appellees appear to have been under the impression that Union's only grievance against Hough was that he was not paying union wages to his employees who were working on the Frez-N-Stor job. In all fairness it must be stated that the pleadings could be so construed. However, we think that, as the testimony was developed, it became apparent Union's grievance with Hough was, among others, that he was not paying union wages to his employees who were working:

on other jobs in the same county. In appellants' brief it was stated that Hough employed at least five electricians at the Frez-N-Stor job and at the time of this litigation his employees were doing electrical work on the Welch Grape Juice job, the Red Comb Mill job, and the Mountain Inn Hotel job—all in Washington County. This statement does not appear to be disputed. During the trial before the Chancellor, Union attempted to show Hough was not paying union wages to his employees on jobs other than the Frez-N-Stor job, but he was not allowed to do so.

For the reasons stated above we proceed to answer the following question: Did Union have the right to picket Hough at the Frez-N-Stor job because he was not paying union wages at that time to his employees working on other electrical jobs in the same county? We have concluded that the answer to the above question must be in the affirmative. We base this conclusion on what appears to be the uniform holdings of other jurisdictions, including federal decisions. We mention briefly a few of these decisions.

*Newark Ladder & Bracket Sales Co., Inc., et al.* v. *Furniture Workers Union Local 66 et al.*, 125 N. J. Eq. 99, 4 A. 2d 49: Appellant conducted a business at South 13th Street, Newark, New Jersey, composed of a retail store, a wholesale store, and a manufacturing plant. Later the manufacturing plant was moved to Kinney Street in the same town. Workers at the Kinney Street plant went on strike, and they picketed the retail and wholesale stores at South 13th Street. The Court held this permissible saying that a union may picket to keep other union men from working and also to keep the public from patronizing the employer. The decision rested on the latter point. *Texas State Optical* v. *Optical Workers Union 24859 et al.*, Tex. Civ. App. (1953), 257 S. W. 2d 493: Appellant (two Rogers Brothers) operated place of business for sale of glasses and rims at offices at 649 Orleans Street, Beaumont, Texas. These same two brothers and two other brothers manufactured

glasses and sold them (wholesale) two blocks away at 861 Orleans Street. Employees at 861 first picketed that place and later they picketed at 649 Orleans Street. The court held that the picketing was for a lawful purpose and the union had a right to picket with the decision being based on the fact that the two businesses were closely related in ownership and that pressure by the union on one amounted to pressure on the other.

*Alamo Express, Inc.* v. *International Brotherhood of Teamsters, etc.,* Tex. Civ. App. (1948), 215 S. W. 2d 936: Appellant motor carrier had terminals at Houston and other cities and employed a total of 144 persons, including 35 "over the road" drivers. The employees voted to strike, with Houston voting 8 to 0 for, another place 8 to 3 against, and other places for and against. The employees picketed the Houston terminal. The Court held the union had a right to picket because "A majority of the over the road drivers belonging to the Houston Local had voted to strike and they had the right of peaceful picketing to put the public on notice of their strike". *American Brake Shoe Co.* v. *District Lodge 9 of International Ass'n of Machinists, et al.* 373 Pa. 164, 94 A. 2d 884: Appellant owned factories at St. Louis, Missouri, Meadville, Pennsylvania, and other places where appellant had no-strike contracts with the union. When the contract at St. Louis expired, five union employees went to Meadville and picketed the plant there. The court held that the picketing was legal and could not be enjoined. Most of the discussion referred to the fact that the union had no contract in force at St. Louis and therefore had a right to picket in Meadville, the inference being that the question of separate locations was not material.

*Lora Lee Dress Co., Inc.* v. *International Ladies' Garment Workers Union Local No. 85 et al.,* 129 N. J. Eq. 368, 19 A. 2d 659: Appellant had place of business in New York and another place of business in New Jersey. There was a labor dispute in New York but not in New Jersey. Employees in New Jersey picketed that plant.

The Court held that the employees in New Jersey had a right to picket under the general constitutional right of free speech. *National Labor Relations Board* v. *General Drivers, Warehousemen and Helpers, Local, 968 et al.*, 5th Cir. (1955), 225 F. 2d 205: Employer was a contractor operating at several different sites and employees included members of several unions. One union had labor dispute and went on strike. Employees at another site picketed. The Court held that the employees had a right to picket, stating:

"Irrespective of the Board formulated 'situs' theory, however, we think such peaceful picketing upon common premises, directed solely against the primary employer with whom a labor dispute exists, is still lawful under the Act, and that any adverse effect upon secondary, neutral employers must necessarily be viewed as incidental to the lawful exercise of that statutory right."

While the facts in none of the above mentioned decisions are exactly like the facts in this case, we are convinced that the principles announced in them lead unerringly to the conclusion heretofore announced when applied to the assumed purpose in this case. We have examined the decisions by this Court in *International Brotherhood of Teamsters, Local 878 v. Blassingame*, 226 Ark. 614, 293 S. W. 2d 444, and *International Brotherhood of Electrical Workers, Local Union No. 295 v. Broadmoor Bldrs., Inc.*, 225 Ark. 260, 280 S. W. 2d 898, and find they are not in conflict with our announced conclusion.

Finally it is contended by Davis that, in no event, could Union lawfully picket the Frez-N-Stor job (where he was the prime contractor) because he was paying union wages to all his employees and Union expressed no grievance toward him. In view of the conclusion heretofore reached it is not necessary for us to pass upon Davis' contention. However, again in the public interest, we state our conclusion to be that his contention is without merit. Otherwise it would leave Union

without a remedy even though a lawful labor dispute existed between Hough and Union. On the other hand Davis can protect himself merely by doing business with sub-contractors who pay the prevailing wages.

The decree is therefore reversed, and appellants are awarded their costs.

Reversed.