WILLIAMS *v*. ARTHUR J. ARNEY Co.

5-3772                                    398 S. W. 2d 515

Opinion delivered January 31, 1966

*H. Clay Robinson,* for appellant.

*Coleman, Gantt, Ramsay & Cox,* for appellee.

JIM JOHNSON, Justice. This appeal arises from an injunction against picketing. On July 7, 1965 appellees Arthur J. Arney Company, Inc., an Arkansas corporation, and Arthur J. Arney, Jr., filed a complaint in Jefferson Chancery Court against appellants Jasper Williams, five other individuals and the Construction and General Laborers' Local Union 858. Appellees alleged the company had contracted to build a building at Arkansas A.M. & N. College and an addition to Simmons First National Bank and while engaged in this construction, the individual appellants, as representatives of the union, began to picket the two construction sites with signs saying that appellees were not paying the prevailing wages for laborers; that the picketing was for the sole purpose of coercing the company into discharging non-union employees and hiring only members of the laborers union; that the company used union labor entirely, with the exception of common laborers

and paid its laborers the Pine Bluff prevailing wage; that the objective of the picketing was in violation of Ark. Stat. Ann. §§ 81-201-81-203 (Repl. 1960) and Amendment 34 of the Arkansas Constitution, the "right to work" law; that because of the picketing, union member employees of appellees and their subcontractors refused to work on the job sites, causing appellees irreparable damage; and prayed that appellants be enjoined from picketing the job sites and for judgment for damages caused by the picketing. A temporary injunction was issued the same day, July 7th, with hearing on a permanent injunction set for July 21st. On July 12th, this court issued its mandate to the trial court setting aside the injunction which had been granted without reasonable notice to appellants, without prejudice to the right of appellees to apply to the chancery court for an injunction after first giving notice to appellants.[1]

Appellants answered the complaints, alleging that the picketing was for the purpose of publicizing that appellees were not paying the wage scale established by a collective bargaining agreement between the local union and the Arkansas General Contractors for the Pine Bluff area, which wage scale is the prevailing wage scale as established by the U. S. Department of Labor for the Pine Bluff area, and for the further purpose that appellees have refused to hire union members and the Union does not believe that appellees have the right to refuse to hire laborers because of their affiliation with the local union. On July 21st, after a

---

[1]This court is reluctant to approve the granting of temporary restraining orders in this type of case, where no notice of the application for temporary restraining order was given, and no emergency appeared from the record. In a per curiam order entered on November 20, 1964, involving a labor dispute, we said:

"5-3524. *H. T. Bryant et al* v. *Kelly-Nelson Constr. Co., Inc.,* from Independence Chy.: The restraining order having been granted without reasonable notice to appellants, and no record of the testimony having been made, said restraining order is set aside without prejudice to the right of appellee to apply to the chancery court for a restraining order after first giving reasonable notice to the appellants herein."

hearing, a temporary injunction was again granted, which was made permanent.

For reversal appellants contends that "the chancellor did not find that the purpose of the picketing by the union was to coerce the employer into hiring only union members, as alleged in the complaint, nor did the chancellor find a violation of the provisions of Ark. Stat. Ann. §§ 81-201—81-203; consequently the injunction was wrongfully issued."

In its opinion the trial court did find, *inter alia*, that the primary purpose of the picket line was to induce or compel appellees to sign an employment agreement with the union. The court also found that the prevailing wage in the Pine Bluff area for common labor was $1.25 to $1.50 per hour (which is what appellees were paying).

The testimony leaves no doubt that one of the purposes of the picketing was to induce appellees to sign an employment agreement. The agreement is one between the Associated General Contractors, Arkansas Chapter, and appellant Local Union 858, which contains an hourly pay scale for various classes of employees including common labor. According to the agreement, the pay for common labor at the time of suit was $2.30 an hour. It is undisputed that this is the pay scale paid on much of the larger industrial construction in the area, on all federal construction in the area, and is the same scale adopted by the U. S. Department of Labor.

The agreement also contains the following provision:

"Section 6. That the Union will furnish at the request of the contractor duly qualified workmen in the various classifications covered by this Agreement, in sufficient numbers as may be necessary to properly perform work contracted for by the con-

tractor, in the manner and under the conditions specified in this Agreement.''

Appellees argue that to demand signing of an agreement containing this provision is a violation of Amendment 34 and clearly within the prohibition contained in *Kaiser* v. *Price-Fewell, Inc.,* 235 Ark. 296, 359 S. W. 2d 449. The chancellor did not find a violation of Amendment 34, and we do not agree that Section 6 of the agreement falls within *Price-Fewell.* The agreement provides that the local union will be bargaining agent for the employees, and the Associated General Contractors, Arkansas Chapter, will be bargaining agent for the contractor. Nowhere in the agreement is there a requirement that the employees be or become union members or that the contractor be or become a member of the Associated General Contractors. Further, section 6 states the union will supply workmen *at the request* of the contractor, but nowhere does the agreement provide that the contractor *must* request workmen from the union.

In *Price-Fewell* it was obvious that in order to obtain work on a job, a workman (even non-union) must ''affiliate'' in some way with a union. That is not the case here. There was some testimony that the union wanted appellees to hire union labor, but the preponderance of the evidence was to the effect that the union did not demand that appellees hire union labor or union labor exclusively. It is quite logical for the union to want the contractor to use union labor, even so that desire is a far cry from demanding that the contractor use union labor or union labor exclusively.

As conceded by appellants, the signs carried by the pickets might have been better worded, however on the whole case we, like the chancellor, are unable to say that there was a violation of Amendment 34 of the Arkansas Constitution or its enabling legislation, Ark. Stat. Ann. §§ 81-201—81-205 (Repl. 1960). This being true we find no basis for the chancellor's conclusion that the

picketing here in question was unlawful. See *Netherton* v. *Davis*, 234 Ark. 936, 355 S. W. 2d 609.

Reversed.

WARD, J., dissents.

PAUL WARD, Justice, dissenting. I am unable to agree with the majority opinion. The essence of my reasons is summarized below.

The chancellor was fully justified in finding; that $1.25 per hour was the prevailing wage rate for common labor in the Pine Bluff area; that no employee was asking for a raise, and, that the purpose of the picketing was to force appellees to hire union laborers. Appellants' agent was quoted as saying: "We want you (appellees) to sign this union labor contract and work union labor." The record shows that the agent admitted making the quoted statement.

The opinion of the chancellor contains this statement: "The court finds that the maintaining of the picket line around the construction is *unlawful*." (My emphasis.) Ark. Stat. Ann. § 81-201 (Repl. 1960) gives appellants the right to *bargain* for higher wages at any time and under any circumstances, but I do not understand it gives them the same freedom to *picket*. This case is, in my opinion, a fine example of the truth of the old adage—actions speak louder than words. I think the chancellor pierced the veil of subterfuge, located the real purpose of the picketing (to force appellees to hire union labor), and reached a just conclusion.

The record reveals to my satisfaction that appellants are not sincere when they pretend that they only wanted appellee to sign the contract agreement. If they were sincere why didn't they accept appellee's offer to bargain with them after he had finished the jobs under construction? The obvious reason why they would not

wait is that the appellee would then be *free* to bargain—to sign or not to sign, but by not waiting they knew appellee was "over a barrel" and was *not free* (standing to lose money) to *bargain*. Once more I point to language in the statute previously mentioned:

" . . freedom of unorganized labor to bargain individually is declared to be the public policy of the State under Amendment No. 34 of the Constitution."