LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 107, Plaintiff,

v.

KUNCO, INC., Defendant.
No. FS–71–C–21.

United States District Court,
W. D. Arkansas,
Fort Smith Division.
July 3, 1972.

Sam Sexton, Jr., Fort Smith, Ark., for plaintiff.

Robert L. Jones, Jr., of Jones, Gilbreath & Jones, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

On March 26, 1971 the plaintiff, Laborers' International Union of North America, Local No. 107, filed this action against Kunco, Inc., under 29 U.S.C. § 185(a) alleging that it negotiated a "hiring hall contract" with the Fort Smith Contractors Association of which Kunco, Inc., was and is a member and seeking money damages and declaratory and injunctive relief for alleged breach of the contract.

Paragraph 10 of the "hiring hall contract, the basis for this action, is as follows:

"The Union will furnish, if requested by the contractor, duly qualified workmen in the various classifications covered by this agreement, in sufficient number as may be necessary to properly perform work contracted for by the contractor, in the manner and under the conditions specified in this agreement. Men may be requested by name, and shall be referred, if the man requested has worked for the calling contractor within the past twelve (12) months in the jurisdiction of Local No. 107, unless employed elsewhere at the time of the request. The Union will maintain a register of all persons who desire work of any classification covered by this contract. Such register shall be maintained without discrimination as to race, col-

or or status of membership. Contractors agree that no person shall be employed on any job covered by this agreement except such persons as shall be referred from the register so maintained. Provided further, however, that nothing in this contract shall prevent the employment by the contractor of nonregistered persons at any time when no men are available from the register so maintained. Available means reporting to work within Eighteen (18) hours following request by the contractor."

Paragraph 5 of plaintiff's complaint is as follows:

"Plaintiff states that although the contract as aforesaid was executed on January 1st, 1970 and has been in full force and effect at all times since January 1st, 1970 and will continue in full force and effect at least until December 31st, 1971, that the Defendant, Kunco, Inc., has willfully and intentionally failed and refused to abide by the terms and conditions of the contract in that the Defendant, Kunco, Inc., is engaged in construction work in Benton County, Arkansas and has wholly failed and refused to follow the contract provisions with regard to employees working on the said job."

The prayer of the complaint is as follows:

"WHEREFORE, premises considered, Plaintiff pray that it have judgment against the Defendant for the sum and amount of One Hundred Thousand Dollars ($100,000.00) and that this Court, after hearing, make and enter its Order permanently enjoining and restraining the Defendant from further abridging the terms and conditions of the contract between the parties."

On April 9, 1971 the defendant filed motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

Each party submitted a brief and the motion was argued orally before the Court and taken under advisement.

Since the question of jurisdiction is always before the Court regardless of whether raised by either party, we first address ourselves to the question of jurisdiction.

29 U.S.C. § 185(a) is as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Under the allegations of the complaint Kunco is an employer of laborers in Arkansas and plaintiff is a labor organization. There is a question as to jurisdiction since the controversy arises from the construction of an Arkansas contract that in no wise concerns a matter in which the Union represents *all* the employees of Kunco and is not a collective bargaining contract concerning labor conditions, wages or unfair labor practices.

The Courts have consistently held that 29 U.S.C. § 185 shall not be given a narrow reading. Smith v. Evening News, (1962) 371 U.S. 195, 83 S.Ct. 267, 9 L. Ed.2d 246; Chasis v. Progress Mfg. Co., 3 Cir., 382 F.2d 773; Smith v. DCA Food Ind. Inc., (D.C.1967) 269 F.Supp. 863.

In the case of Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, at p. 422 (5 Cir., 1963) is found the following language:

"The main issue urged by Deaton on this appeal is that the district court had no jurisdiction under Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185 (n. 1, supra) over the mileage tax-license tag dispute because it was not a labor grievance but a commercial dispute between independent contractor-lessors and their lessee. Deaton's contention is predicated upon too narrow a meaning of 'contracts' as used in Section 301(a) (n. 1, supra). It is now settled that 'contracts', as there used, includes more than 'collective bargaining agreements,' and is broad enough to include any agreement 'between employers and labor organizations significant to the maintenance of labor peace between them.' Retail Clerks International Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc., 1962, 369 U.S. 17, 27, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503. The Supreme Court has heretofore taken the position that it is not necessary to determine whether owner-operators are 'employees' protected by the Act, since the establishment of minimum rental to them was integral to the establishment of a stable wage structure for clearly covered employee-drivers. Local 24 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO v. Oliver, 1959, 358 U.S. 283, 294–295, 79 S.Ct. 297, 3 L.Ed.2d 312; United States v. Drum, 1962, 368 U.S. 370, 382, n. 26, 82 S.Ct. 408, 7 L.Ed.2d 360. It is true that in Oliver, approved in Drum, the bargaining unit included an overwhelming majority of concededly employed drivers, while in the present case there are very few admitted employees, and an overwhelming majority of lessor-drivers. However, the Union points out, soundly we think, that it has a legitimate interest in protecting its area wage standards. See In re Local Union No. 741, etc. (Keith Riggs Plumbing, etc.), 1962, 137 NLRB No. 121, 50 L.R.R. M. 1313 at 1314. Moreover, Deaton acknowledges that it has some 'employees.' It cannot, then, be denied that the contract was 'between an employer and a labor organization representing employees [etc.]' within the meaning of Section 301(a) (n. 1, supra). That section is then broad enough to include any agreement significant to the maintenance of labor peace between the employer and the Union. Clearly, the mileage tax-li-

cense tag agreement comes within that class."

In the case of Thomas v. Old Forge Coal Company (D.C., 1971), 329 F.Supp. 1000 the plaintiffs, as Trustees of the Anthracite Health and Welfare Fund brought suit under 29 U.S.C. § 185 against Old Forge for delinquent royalty payments. At page 1002 appears the following language:

"It is now well settled that § 301(a) is not to be given a narrow reading and that it must be construed to reflect the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). See also, Black-Clawson Co., Inc., Paper Machine Division v. Intl. Assn. of Machinists, 313 F.2d 179 (2d Cir. 1962); Metal Products Workers Union, Local 1645 [UAW–AFL–CIO] v. Torrington Co., 242 F.Supp. 813 (D.Conn.1965), aff'd., 358 F.2d 103 (2d Cir. 1966). (Section 301(a) is to be read expansively.) This Court has, for example, previously held that a suit by Trustees of the Health and Welfare Fund to collect royalties due them under the terms of a collective bargaining contract is cognizable in Federal Court under § 301(a). Thomas v. Reading Anthracite Company, 264 F.Supp. 339 (M.D.Pa.1966). The term 'contracts' as used in § 301(a) is not limited to collective bargaining agreements, but applies to agreements between employers and labor organizations which resolve controversies arising out of the employment relationship. Retail Clerks International Assn. Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1961).

In view of the above cited opinions we conclude that this Court has jurisdiction of the parties and subject matter, even though we have serious doubt as to whether or not the "hiring hall" agree-ment here under consideration was intended by Congress to be included; and would likely have reached a different conclusion had this been a case of first impression without the benefit of the quoted precedents.

The defendant bases its motion to dismiss on the fact that the Arkansas Supreme Court construed Amendment 34 to the Arkansas Constitution and its enabling acts as declaring that hiring hall contracts such as the one in this case are prohibited and illegal in Arkansas. The plaintiff in its memo brief at page 9 thereof states:

". . . . The defendant correctly cites Kaiser v. Price-Fewell, Inc., 235 Ark. 295 [359 S.W.2d 449] (1962) for the proposition that under State Law, the hiring hall agreement, similar to the one here in issue, has been condemned by the Arkansas Supreme Court . . . . ."

The language of the majority opinion in that case makes it clear that the hiring hall arrangement is prohibited by the Constitution and laws of Arkansas.

At page 303, 359 S.W.2d at page 454, of that opinion appears the following language:

"It follows, therefore, that under Amendment 34 to the Constitution which was adopted by the electors of Arkansas in 1944, under the enabling statute for this amendment (Act 101 of 1947, Sec. 81–201 et seq., Ark. Stats. 1947) and the decisions of this Court construing these measures, we have no choice but to affirm the Chancellor's finding that the hiring hall arrangement sought by the union is prohibited by the Constitution and laws of this State. To hold otherwise would substitute our will, by Court decree, for the expressed will of the legislature and the people and render nugatory a portion of our Constitution without authority."

The Kaiser v. Price-Fewell, Inc., case contained a strong dissent by Harris (C. J.) Smith and Ward (J. J.) which

contained the following language at page 304, 359 S.W.2d at page 455:

". . . . I am very much afraid that the effect of the majority opinion is to outlaw the hiring hall . . . ."

The United States Supreme Court refused to review. Consequently we are certain that the Supreme Court was aware that the hiring hall agreement was prohibited in Arkansas and at that time found no ground for review.

In 1966 the Arkansas Supreme Court decided Williams v. Arthur J. Arney Co., 240 Ark. 157, 398 S.W.2d 515, which in effect reaffirmed its decision in the Kaiser v. Price-Fewell, Inc., case. At least there was no retreat from its announced conclusions.

Right to work laws have generally been held valid. 92 A.L.R.2d 598 treats the subject of "validity and construction" of such laws. At page 620 of that annotation appears the following language:

"[c] Hiring hall and similar agreements.

"Arrangements whereby the employer agrees to hire new employees exclusively through the facilities of the union 'hiring hall,' or whereby the union is given the right to approve or disapprove prospective employees, have also been declared illegal under right-to-work laws.

"A 'hiring hall' clause in a collective bargaining contract which provided that the union was to be the sole and exclusive source of referral of applicants for employment, that each applicant for employment would register with the union, and that in order to obtain the highest priority group among the applicants, the applicant must have passed a journeyman's examination given by the local union, was held in Kaiser v. Price-Fewell, Inc. (1962, Ark.) [235 Ark. 295,] 359 S.W.2d 449, to be a violation of the right-to-work statute of Arkansas which proscribed discrimination with respect to employment on account of

refusal 'to join or affiliate with, a labor union,' the court saying that registration of all applicants with the union and the taking of a journeyman's examination given by the union constituted 'affiliation' with the union. A decree enjoining picketing for the purpose of compelling the employer to agree to such a contract was affirmed."

We also note the annotations at page 622 as follows:

"However, in an action between two sheet-metal contractors where the plaintiff was claiming damages for the defendant's having induced a breach of the collective bargaining agreement between the plaintiff and the bargaining representative of his employees, it was contended by the defendant that a clause in the agreement which provided that the union would furnish at the request of the plaintiff employer a sufficient number of qualified workmen to execute the work contracted for by the employer was illegal under the Arkansas 'freedom-to-work' amendment to its constitution and supplementing legislation, since it called for a closed shop, so that no cause of action could arise for inducing its breach, but it was held in Ketcher v. Sheet Metal Workers' International Assn. (1953 D.C.Ark.) 115 F.Supp. 802, that there was nothing in the contract specifically calling for a closed shop, a union shop, a checkoff of union dues, or any other provision which was repugnant to the constitution or statute, and that the contract was not invalid."

There can be no question but that the law of Arkansas is plainly set forth in the Kaiser v. Price-Fewell, Inc., case. Also there can be no question but that the contract sued on in this case was and is an Arkansas contract, entered into in Arkansas, to be carried out in Arkansas. It falls squarely within prohibition of Arkansas law. There can be no enforceable contract of such nature under Arkansas law. Therefore, no cause of action for an alleged breach thereof can be maintained.

■ Since there is no enforceable contract, then no possible damage can result from breach thereof and no suit for damages can possibly be stated, therefore the complaint for damages should be dismissed.

Before passing from the facet of legality we refer to 28 U.S.C. § 2281 which is as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The basis of the complaint filed herein is an alleged violation of a "hiring hall agreement" which has been declared illegal by the Arkansas Supreme Court and the United States Supreme Court knowingly refused to review. We deem this suit a request by the plaintiff that this district court overrule the Arkansas Supreme Court decisions which are and have become the law of Arkansas. 28 U.S.C. § 2281 would require a three judge court before an interlocutory injunction could issue against enforcement of State officers.

■ We can see where this doctrine would act as a deterrent to a district court, but we see no three judge question presented in the status of this case. For many reasons the laws concerning three judge courts are not "A measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States (1941), 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

Although the ultimate declaration sought in this case is the illegality of the Arkansas laws, no state officer is a party to this action and the subject matter which with the necessary parties, would require a three judge court can be passed on by the district court. This is particularly true since the holding of the district court is that the Arkansas law is not illegal and that Arkansas law govern this case.

This Court is not unaware of the contention of the plaintiff that the contract provisions which this court finds illegal and impermissible in Arkansas are (by virtue of Federal statutory law and Federal Court construction) converted to legally permissible contract provisions as matters of Federal law. In other words plaintiff contends that the Federal laws have pre-empted the entire field of labor contracts and Amendment 34 and its enabling Acts are now passé and no longer either applicable or legal; that the legality of a hiring hall agreement is a federal question alone and no state law can affect the legality of a hiring hall agreement.

Plaintiff quotes from the 1961 case of Local 357, Int. Brotherhood of Teamsters, etc. v. N.L.R.B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, and cites N.L.R.B. v. Houston Chapter (1965) 5th Circuit, 349 F.2d 449 and N.L.R.B. v. Tom Joyce Floors, Inc. (1965) 9th Cir., 353 F.2d 768, which cases require the closest consideration.

In the *Teamster case*, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, the N.L.R.B. undertook to legislate that a hiring hall contract was illegal per se. Justice Douglas writing for the majority said at page 673, 81 S.Ct. at page 838:

"Congress has not outlawed the hiring hall. . . ."
and at page 674, 81 S.Ct. at page 839:

"There being no express ban of hiring halls in any provisions of the Act, those who add one, whether it be the Board or the courts, engage in a legislative act."

and at page 677, 81 S.Ct. at page 840:

"If hiring halls are to be subjected to regulation that is less selective and more pervasive, Congress not the Board is the agency to do it."

In our opinion this language constitutes an express declaration that Congress has not legislated on the subject of "hiring halls" and the N.L.R.B. does not have authority to legislate at all. It also declares that for the ban on hiring halls to be effective the ban must be by legislative act.

Instead of saying that Congress has specifically pre-empted the entire subject of the legality of "hiring hall" agreement, this United States Supreme Court opinion expressly declares that Congress has *not* pre-empted the field—in fact, has not legislated on that subject at all although it could do so if it saw fit.

The *Price-Fewell case* from Arkansas was decided subsequently to the *Teamster case* and the United States Supreme Court refused to review.

It seems logical that the United States Supreme Court in refusing to review found that the State of Arkansas through its proper legislative processes enacted legislation which declared "hiring hall arrangements" to be illegal in Arkansas. We cannot assume any other conclusion. Had the United States Supreme Court deemed the Arkansas legislation against "hiring hall arrangements" to have been pre-empted by existing Federal legislation, it is logical to assume that it would have reviewed the Arkansas case and so declared.

The *Tom Joyce Case*, 353 F.2d 768 is a 9th Circuit case of 1965 arising from Nevada. There the N.L.R. Board sought enforcement of its order directing Tom Joyce Floors Inc., to cease and desist from certain unfair labor practices. The first unfair labor practice found by the Board was the failure and refusal of Joyce to bargain collectively with Local 567 (the exclusive representatives of the employees of Joyce) and that Joyce refused to negotiate with the Union for establishment of a union hiring hall.

We point out that there was a collective bargaining contract between Joyce and Painters Local 567. Joyce had agreed to a closed shop and the entire case is based on the jurisdiction of the N.L.R. Board conferred by reason of the Collective Bargaining Contract in existence.

The trial court decision was rendered in an unreported case. The Supreme Court of Nevada declined to pass on the legality of the proposal under State law because the proposal had not been incorporated into a collective bargaining agreement.

The extent to which a State may limit collective bargaining is declared to be a federal question.

Had there been no "Collective Bargaining Agreement" in effect, we assume the 9th Circuit would have held as taught in the *Teamster case* that the Board could not legislate. It is the closed shop and collective bargaining agreement which gave the N.L.R.B. jurisdiction to hear the case.

We assume it will be granted that there is no "Collective Bargaining Agreement" or jurisdiction of the N.L.R.B. in the case at bar.

The *Joyce case* cites the N. L. R. B. v. Houston Chapter (1965) 5th Cir., 349 F. 2d 449, decided August 12, 1965. The opinion in that case states that N.L.R.B. petitioned for enforcement of its order finding the contractors in violation of Sec. 8(a) (5) and (1) of the Act which in its foot note at page 450 is condensed as follows:

1. 29 U.S.C.A. § 158(a) (5) and (1):

"(a) It shall be an unfair labor practice for an employer—

\*　　\*　　\*　　\*　　\*　　\*

"(5) to refuse to bargain collectively with the representatives of his employees, \*　\*　\*

\*　　\*　　\*　　\*　　\*　　\*

"(1) to interfere with, restrain, or coerce employees in the exercise of the

rights guaranteed in section 157 of this title;"

29 U.S.C. § 157 is as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *."

The foot note further states:

This court has jurisdiction of the proceeding under § 10(e) of the National Labor Relations Act, as amended. 29 U.S.C.A. § 160(e).

The case arose from a controversy filed by Local 18 Hod Carriers, the *statutory bargaining representative* for the Hod Carriers and the laborers employed by the contractors forming the membership of the respondent (emphasis added). In other words, there was in issue a closed shop agreement between the parties either actually, or the equivalent of a collective bargaining agreement. This relationship was basic to the authority of the N.L.R. Board to consider a hiring hall proposal.

We note that in each of the two circuit court cases cited by the plaintiff the N.L.R. Board is a party which means there was a collective bargaining agreement in force.

In the Texas case 349 F.2d 449 at page 453 is found the following language:

"Respondents assert that the hiring hall clause here is a form of union security contemplated by § 14(b) and left to the states for prohibition. It is true that the terms of § 14(b) as well as the legislative history suggest the intent on the part of Congress to save to the states the right to prohibit compulsory unionism. However, the long and the short of this matter is that § 14(b) contemplates only those forms of union security which are the practical equivalent of compulsory unionism. See N. L. R. B. v. General Motors Corp., 1963, 373 U.S. 734, 83

S.Ct. 1453, 10 L.Ed.2d 670; Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 1963, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678. Membership in the union is not compulsory under the clause here in question. The hiring hall is to be administered on a non-discriminatory basis as between union members and non-union members. No doubt union membership will be encouraged under the arrangement, indeed it may be a boon to the union; nevertheless such an arrangement does not constitute compulsory unionism so long as the arrangement is not employed in a discriminatory manner. Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., supra.

"Accordingly, we find that the hiring hall clause in question is not envisaged in § 14(b) and it follows that Texas is without authority to proscribe it. The federal labor law is paramount, and respondents should have bargained with the union on the clause."

With the utmost respect for the decisions cited by the plaintiff, we point out that in the case at bar no effort is made to show and no contention is made that this is a case within the jurisdiction of the N.L.R.B.

Cases and subject matter that can be considered by the N.L.R.B. are restricted; and as pointed out in the *Teamster case* the N.L.R.B. cannot legislate in the field of Hiring Hall Arrangements.

Neither the 5th nor the 9th Circuit referred to the *Teamster case.* We presume there was no necessity for either of them to do so under the facts in each of those cases.

In the case at bar we feel that the United States Supreme Court in effect held there was no pre-emption or it would have reviewed the *Price-Fewell case* from Arkansas when requested to do so, since it had previously decided the *Teamster case.*

**634**

There is no collective bargaining agreement here involved and the N.L.R.B. is not in Court asking enforcement of one of its orders. There is no basis for N.L.R.B. jurisdiction.

■ Consequently we fail to find pre-emption and find to the contrary.

The complaint of the plaintiff should be dismissed.