NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HOUSTON CHAPTER, ASSOCIATED
GENERAL CONTRACTORS OF AMER-
ICA, INC., and Construction Employers'
Association of Texas, Respondents.

No. 21327.

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1965.

Rehearing Denied Sept. 14, 1965.

**450**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Wells, Atty., Arnold Ordman, Gen. Counsel, Marion Griffin, Atty., N. L. R. B., Washington, D. C., for petitioner.

V. R. Burch, Jr., L. G. Clinton, Jr., H. L. Deakins, Jr., John B. Abercrombie, Houston, Tex. (Fulbright, Crooker, Freeman, Bates & Jaworski, Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel), for respondents.

Howard M. Fender, Asst. Atty. Gen. of Texas, Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., Edward R. Moffett, Robert W. Norris, Asst. Attys. Gen., Austin, Tex., for intervenor.

Chris Dixie, Houston, Tex., Robert Connerton, Washington, D. C., Dixie & Schulman, James F. Wolf, Houston, Tex., for charging party.

Louis Sherman, Sherman, Dunn & Sickles, Washington, D. C., proposed amicus curiae.

Before GEWIN and BELL, Circuit Judges, and McRAE, District Judge.

GRIFFIN B. BELL, Circuit Judge:

This petition of the National Labor Relations Board for enforcement of its order finding respondents in violation of § 8(a) (5) and (1) of the Act [1] presents a unique labor law question. Respondents are non-profit corporations with memberships consisting of employers engaged in the building and construction trade in Texas. The unfair labor practice charge which gave rise to the petition to enforce was filed by the Construction and General Laborers Union, Local No. 18, International Hod Carriers, Builders and Common Laborers Union, AFL-CIO, the statutory bargaining representative for the hod carriers and laborers employed by the contractors forming respondents' membership. The unfair labor practices occurred in Houston, Texas where respondents have their principal offices and places of business. Each respondent is the collective bargaining agent for its respective employer members, and the activities of the members admittedly affected interstate commerce in the degree required to give the Board jurisdiction.

Respondents and the Union began negotiating for a new contract several weeks prior to the expiration date, October 31, 1961, of the then existing contract. The union proposed that the contract include a provision for a non-discriminatory union hiring hall. The terms, among others, of the tendered provision were that the hiring hall would be the sole source of employees for the various contractors represented by respondents, that the union would select and refer applicants on the basis of such factors as seniority in employment by the respective contractors, length of residence in the area, and general work experience in the trade, but without dis-

---

1. 29 U.S.C.A. § 158(a) (5) and (1):
"(a) It shall be an unfair labor practice for an employer—
\* \* \* \* \*
"(5) to refuse to bargain collectively with the representatives of his employees, \* \* \*."
\* \* \* \* \*
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;"

29 U.S.C.A. § 157:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, \* \* \*."
This court has jurisdiction of the proceeding under § 10(e) of the National Labor Relations Act, as amended. 29 U.S.C.A. § 160(e).

crimination by reason of membership or non-membership in the union. The employer was to retain the right to reject any applicant for employment, and the right to discharge any employee for good cause who had been accepted, but whose services consequently proved unsatisfactory. The hiring hall proposal had reference, of course, only to employees in the categories represented by the union.

Respondents rejected the proposal on the advice of counsel that a non-discriminatory union hiring hall was illegal under the Texas right to work laws which generally provide that no person shall be denied employment on account of membership or non-membership in a labor union.[2] Upon the expiration of the existing contract, the union called a strike in support of its contract demands including the demand for the hiring hall. A Texas state court enjoined the strike on the basis that a hiring hall agreement would contravene the public policy embodied in the Texas right to work laws. The parties subsequently entered into a contract substantially similar to the old contract, but without prejudice to the union pursuing its rights with respect to the hiring hall question. The union then filed a charge with the Board alleging that respondents had violated § 8(a) (5) and (1) of the Act by refusing to bargain regarding the hiring hall proposal. The trial examiner sustained the unfair labor practice complaint issued on this charge.

The board affirmed, holding, with two members dissenting, that the hiring hall question presented a mandatory subject of bargaining under § 8(d) of the Act, 29 U.S.C.A. § 158(d). The board, as had the examiner, rejected the contention of respondents that the hiring hall proposal would constitute an agreement requiring membership in a labor organization as a condition of employment within the

meaning of § 14(b) of the Act, 29 U.S.C.A. § 164(b). This section leaves control of this question to the states where they choose to prohibit such a requirement.

We enforce. In our view the hiring hall clause in question was a mandatory subject of collective bargaining under the Act, and it does not fall under the § 14 (b) exception.

It is now settled law that a labor contract providing for a non-discriminatory hiring hall is legal, absent the actual practice of discrimination under the agreement. Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 1961, 365 U.S. 667, 81 S. Ct. 835, 6 L.Ed.2d 11. But, the question whether a demand for such a clause falls within the class of mandatory subjects of bargaining, thus making it lawful to insist on their inclusion in labor agreements, depends on whether the demand comes within the meaning of the language " * * * wages, hours, and other terms and conditions of employment * * * " in § 8(d) of the Act.[3]

Respondents urge that this language does not cover the obtaining of employment but is instead limited to those conditions which arise after an actual employment relationship has been established. They point to the inclusion of the term "hire" in § 8(a) (3), 29 U.S.C.A. § 158(a) (3), which makes it an unfair labor practice to discriminate " * * * in regard to hire or tenure of employment or any term or condition of employment * * * ", and the fact that "hire" is not included in § 8(d) to support this contention. The argument is that the omission was intentional and thus the hiring process is not embraced in § 8(d). However, § 8(d) also fails to mention "tenure of employment" while this clause is present in § 8(a) (3),

---

**2.** Articles 5154a, 5154g, 5207a, 7428–1, 7428–2, Vernon's Ann.Revised Civil Statutes of Texas.

**3.** 29 U.S.C.A. § 158(d):
"For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, * * *."

and it has been held that "tenure of employment" is a condition of employment and subject to mandatory bargaining. See Fiberboard Paper Products Corp. v. N. L. R. B., 1964, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233. Cf. Town & Country Mfg. Co. v. N. L. R. B., 5 Cir., 1963, 316 F.2d 846. The terms of hiring in this particular industry, such as would provide for the establishment of a seniority system through the use of a hiring hall, no less than tenure, are terms and conditions of employment.

Respondents also urge that § 8(d) is limited in scope to no more than what is allowed under the 1959 amendment to the Act set out in § 8(f), 29 U.S.C.A. § 158(f), which amendment would prohibit a strike to obtain the hiring hall clause. Section 8(f), in pertinent part, permits an employer in the building and construction industry to make a contract with a union before the union's majority is established to provide that the employer will notify the union of employment opportunities, or give such union an opportunity to refer qualified applicants for such employment. The amendment makes such a contract legal when absent the amendment it would not be, because of the union not having a majority, but the contract is not a mandatory subject of bargaining so that strike action in support of obtaining it is authorized. N. L. R. B. v. Int. Hod Carriers, 8 Cir., 1960, 285 F.2d 397, cert. den., 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 203. See 1 Leg.Hist. of LMRDA, pp. 424–425, 452, 946 (1959). The union in the case at bar was the statutory bargaining agent and § 8(f) is not applicable here by way of limitation or otherwise.

The case of N. L. R. B. v. Wooster Division of Borg-Warner Corporation, 1958, 356 U.S. 342, 350, 78 S.Ct. 718, 2 L.Ed.2d 823, furnishes a guide for the application of the language of § 8(d) to the pending question of whether a proposal for a non-discriminatory hiring hall presents a subject matter over which bargaining is mandatory. The test there used was to determine whether the subject matter would settle any term or condition of employment, or would regulate the relations between the employer and employees. If so, in either event, bargaining is mandatory.

■ The record here discloses that employment in the construction trade is transitory in nature, with employees moving from job to job and employer to employer. The nature of the employment does not lend itself to employee security through seniority rights. The proposal of the union was to establish a system of seniority rights and job priority through the use of the non-discriminatory hiring hall. It seems clear that this aim bears directly on regulating relations between the employers and employees in the industry involved, and it would also settle a term or condition of employment. This is a multi-employer situation where the essence of employee security would rest on job priority standards being established through a common source—the hiring hall. In these circumstances we hold that the demand for a non-discriminatory hiring hall clause by the union presented a mandatory subject of bargaining to respondents, and that they were obligated to bargain concerning it, unless the proposal was otherwise proscribed by the Labor Act.

With respect to proscription, it is urged that the hiring hall clause is a form of compulsory unionism left for regulation by the states under § 14(b) of the Act, 29 U.S.C.A. § 164(b), and invalid when found to be in conflict with a state law. That section provides:

"Nothing in this subchapter shall be construed as authorizing the execution on application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

In Local 24 of the International Bd. of Teamsters, etc. v. Oliver, 1959, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312, the Supreme Court reversed the order of an Ohio State court restraining a union and an employer from carrying out a

provision regarding wages in their collective bargaining agreement as being in violation of an Ohio antitrust law. The court held that bargaining with respect to wages was mandatory under § 8(d) of the Act, and thus the Ohio law could not be applied to prevent the parties from carrying out their agreement on this subject unless Congress has left the subject matter to the states for regulation. There the subject matter had not been saved for state regulation. Cf. Algoma Plywood and Veneer Company v. Wisconsin Employment Relations Board, 1949, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691, where the court upheld a state restriction of a maintenance of membership clause in a collective bargaining agreement on the basis that Congress intended to leave control of this aspect of labor relations to the states.

Respondents assert that the hiring hall clause here is a form of union security contemplated by § 14(b) and left to the states for prohibition. It is true that the terms of § 14(b) as well as the legislative history suggest the intent on the part of Congress to save to the states the right to prohibit compulsory unionism. However, the long and the short of this matter is that § 14(b) contemplates only those forms of union security which are the practical equivalent of compulsory unionism. See N. L. R. B. v. General Motors Corp., 1963, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670; Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 1963, 373 U. S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678. Membership in the union is not compulsory under the clause here in question. The hiring hall is to be administered on a non-discriminatory basis as between union members and non-union members. No doubt union membership will be encouraged under the arrangement, indeed it may be a boon to the union; nevertheless such an arrangement does not constitute compulsory unionism so long as the arrangement is not employed in a discriminatory manner. Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., supra.

Accordingly, we find that the hiring hall clause in question is not envisaged in § 14(b) and it follows that Texas is without authority to proscribe it. The federal labor law is paramount, and respondents should have bargained with the union on the clause.

Enforced.