**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TOM JOYCE FLOORS, INC., Respondent.**

**No. 19986.**

United States Court of Appeals Ninth Circuit.

Nov. 4, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Marion Griffin, Attys., N. L. R. B., Washington, D. C., for petitioner.

Ernest S. Brown, Peter I. Breen, Reno, Nev., for respondent.

Joseph R. Grodin, Neyhart & Grodin, San Francisco, Cal., for amicus curiae Local No. 567 Brotherhood of Painters, etc.

Before HAMLEY and BROWNING, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order directing Tom Joyce Floors, Inc. (Joyce) to cease and desist from certain asserted unfair labor practices and to take specified corrective action. The order in question resulted from agency proceedings in which it was found that the company had engaged in two unfair labor practices, in violation of sections 8(a) (1) and 8(a) (5) of the National Labor Relations Act (Act), 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158(a) (1964).

The first unfair labor practice that the Board found, was the failure and refusal of Joyce to bargain collectively with Local No. 567, Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO (Union), the exclusive representative of the employees of Joyce in its Reno, Nevada, operation.[1] This conclusion was based upon a finding of fact, not here disputed, that Joyce refused to negotiate with regard to a Union proposal for the establishment of a union hiring hall, offered during collective bargaining conferences between the Union and Joyce.

Under the proposed hiring hall arrangement, Joyce was to notify the Union whenever workmen were required; the Union would then use its "best efforts" to furnish the desired number of qualified workmen. The company, however, was to have the right to secure the referral of any named employee who was

---

1. The Board found that these employees, excluding office clerical employees, salesmen, guards and supervisors as defined in the Act, constituted an appropriate unit for bargaining purposes.

available for work; to reject a particular employee referred by the Union, for any reason except his "Union membership or activities"; and to secure employees from other sources if the Union was unable to furnish qualified workmen within forty-eight hours after the request.

The Union's proposal provided that any workman who felt he had not been dispatched in accordance with the provisions of the contract, would have the right to appeal to a "Qualifications Committee," composed of an equal number of employer and Union representatives. This committee would be empowered "to reverse any decision of the Union with respect to dispatching." If the Committee's decision was not unanimous, the workman was to have the right to appeal to an "impartial umpire," selected by the workman and the Union, or by the State Conciliation Service, in the event the parties were unable to agree. His decision was to be final and binding.

The contract proposal further provided that the selection of applicants for a job referral would "be on a non-discriminatory basis, and * * * [would] not be based on, or in any way affected by, Union membership, By-laws, rules, regulations, Constitutional Provisions, or any other aspect or obligation of Union membership, policies, or requirements" and that "Union membership * * * [would] not be a condition of employment."

Joyce declined to bargain concerning this proposed referral arrangement, and now resists enforcement of the Board order, on the ground that such an arrangement would violate the right-to-work laws of the State of Nevada.[2]

■ As a general proposition, state law cannot be applied to limit the arrangements that unions and employers may make with regard to subjects of collective bargaining which are made mandatory by the Act. Local 24 of International Brotherhood of Teamsters etc. v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed. 2d 312. Joyce, however, contends that the Union's hiring hall proposal falls within an area that was expressly reserved for state regulation by Congress. The statutory provision relied upon is section 14 (b) of the Act, 61 Stat. 151 (1947), 29 U.S.C. § 164(b) (1964), which states:

"(b) Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

In support of its argument, Joyce cites the decision of a Nevada trial court which held, in an action involving Joyce and the Union, that the Union's hiring hall provision contravened the state's right-to-work laws.[3] Joyce contends that the construction placed upon the Nevada law by the state trial court is conclusive and binding upon the Board.

■ The Board, and this court, are bound by the construction which the courts of Nevada place upon the statutes of that state. We therefore accept, as established, that the hiring hall proposal contravenes the right-to-work laws of Nevada.

■■ But section 14(b) of the Act does not protect a state statute which is so broadly stated or construed. Section 14(b) allows states to prohibit agreements which require union membership as a condition of employment. But state right-to-work laws cannot be construed to prevent collective bargaining on subjects not properly reserved to state regulation by section 14(b). The extent to which section 14(b) authorizes states to

2. Nev.Rev.Stat. 613.230–613.300.

3. The trial court decision was rendered in Painters' Local Union No. 567 v. Tom Joyce Floors, Inc., unreported. On appeal, the Supreme Court of Nevada declined to pass upon the legality of the proposal, under state law, because the proposal had not been incorporated into a collective bargaining agreement. Painter's Local Union No. 567, etc., v. Tom Joyce Floors, Inc., Nev., 398 P.2d 245.

limit collective bargaining is a federal question.

■ The Union's proposal expressly provides that the "(s)election of applicants for referral to jobs * * * shall not be based on, or in any way affected by, Union membership, * * * policies or requirements" and that "Union membership shall not be a condition of employment." While the proposal contemplates an exclusive referral arrangement with the Union, the quoted language indicates that it is not to be administered in a manner which will require membership in a labor organization as a condition of employment. The proposed hiring hall provision is, therefore, not the type of agreement which was left to state regulation by virtue of section 14(b); and the Nevada statute is not controlling.[4]

Joyce also argues, in challenging this provision of the cease and desist order, that the Board erred in finding that the Union's proposal for an exclusive referral arrangement related to " * * * wages, hours, and other terms and conditions of employment, * * *" within the meaning of section 8(d) of the Act, and was therefore a mandatory subject of bargaining within the meaning of section 8(a)(5) of the Act.

■ A similar contention was advanced and rejected in N.L.R.B. v. Houston Chapter, Associated General Contractors of America, Inc., 5 Cir., 349 F.2d 449, decided August 12, 1965. For the reasons stated in that decision we hold that the Union's proposed referral arrangement involved "other terms and conditions of employment," within the mean-

ing of section 8(d), and was therefore a mandatory subject of bargaining within the meaning of section 8(a)(5).[5]

The second unfair labor practice, as found by the Board also involved the asserted failure of Joyce to meet its duty to bargain in violation of sections 8(a)(5) and 8(a)(1). The Board's finding which is challenged here relates to action taken by Joyce with regard to wage scales.

When negotiations for a new contract began, all but one of the nine employees in the unit were employed at an hourly rate of $3.50. The exception was apparently classified as a foreman, and received $3.75 an hour. The company's last wage offer was made to the Union on October 23, 1962, the strike having commenced on October 2, 1962. This offer provided for an increase of twenty-five cents an hour plus a week's vacation for those who worked forty hours a week during the year.

After the strike was called, Joyce employed fourteen replacements; the first was hired on October 5, 1962, a few days after the start of the strike. Nine of the replacements were employed at a rate of $4.00 an hour, four were paid at an hourly rate of $3.50, and one (who worked only one day) at a $3.00 rate. None of the old employees who were retained were paid more than they formerly received. The $4.00 rate was twenty-five cents higher than the scale that all but one of the pre-strike employees would have received under the company's offer of October 23. The company did not consult the Union regarding the $4.00 rate paid replacements for strikers.

The Board concluded that, by making such a unilateral change in conditions of

4. In Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, the Court held that a union hiring hall agreement, which called for referrals irrespective of union membership, was not *per se* unlawful as a discriminatory encouragement of union membership under section 8(a)(3) of the Act. Although this case did not involve section 14(b), it is clear that such hiring hall provisions are not considered to be contrary to the policies of the Act.

5. The court in Houston, stated:
"The proposal of the union was to establish a system of seniority rights and job priority through the use of the non-discriminatory hiring hall. It seems clear that this aim bears directly on regulating relations between the employers and employees in the industry involved, and it would also settle a term or condition of employment." 349 F.2d at 452.

employment, Joyce failed to meet its bargaining duty " * * * as much as though it had refused to bargain concerning the change * * *." Accordingly, the Board held, the company in this regard violated section 8(a)(5) of the Act; and by assertedly abridging section 7 rights of its employees, also violated section 8(a)(1) of the Act.

A new wage program instituted during the bargaining, without consulting the Union, and greater in amount than offered to the Union, constitutes a failure to bargain in good faith and is a violation of section 8(a)(5), without reference to the subjective motive of the employer. N.L.R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230. The Court in Katz did indicate that there might be circumstances which the Board could or should accept as justifying unilateral action. But in N.L.R.B. v. Erie Resistor Corp., 373 U.S. 221, 227, 83 S.Ct. 1139, 10 L.Ed.2d 308, it was held that a legitimate business purpose is not necessarily a defense to an unfair labor practice charge, even in the absence of a finding of a specific illegal intent.

The wages paid the replacements by Joyce were greater than those offered during negotiations. The company offered no evidence to the effect that the higher rate was necessary in order to secure replacements during the strike, or that for any other reason the higher rate was instituted as a temporary measure in response to an emergency situation created by the strike. Moreover, most of the hiring of replacements at the higher rate occurred after Joyce refused to bargain about the hiring arrangement proposed by the Union.

Where unilateral wage action of this kind is shown, just as where discrimination is indicated, the inferences to be drawn from the evidence must be left largely to the Board. See Radio Officers' Union, etc., v. N.L.R.B., 347 U.S. 17, 48, 74 S.Ct. 323, 98 L.Ed. 455. In our view the Board did not err in finding and concluding here that such unilateral action by Joyce was unjustified and violated the Act in the respects mentioned.

One of the affirmative provisions of the Board order under review gives the former employees of Joyce, who went on strike on October 2, 1962, but were not permanently replaced before October 24, 1962, the right to reinstatement. Such a provision is authorized by the Act only if the walkout, which began as an economic strike, can be said to have been converted into an unfair labor practice strike by October 24.

The Board found that such a conversion occurred on October 24 which was when the first express refusal to bargain occurred. Joyce questions this finding, principally on the ground that no unfair labor practices were committed. We have already sustained the Board's conclusion to the contrary, based on its determination that Joyce had refused to bargain concerning the Union's referral plan, and had unilaterally raised wages. Accordingly, we sustain the Board's determination that an unfair labor practice strike came into existence on October 24, 1962.

The petition for enforcement is granted.