**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO. 107, Appellant,**

v.

**KUNCO, INC., Appellee.**

**No. 72–1439.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1973.

Decided Feb. 2, 1973.

---

operated, exclusive hiring halls which do not discriminate between union members and nonmembers.

Appellant Laborers' International Union Local No. 107 brought this action under § 301(a) of the L.M.R.A., 29 U.S C. § 185, to enforce a collective bargaining agreement entered into between appellant and the Fort Smith (Ark.) Contractors' Association, apparently a multi-employer bargaining group of which appellee Kunco, Inc. is a member. The provision of the contract in issue is paragraph ten, which provides:

"The Union will furnish, if requested by the contractor, duly qualified workmen in the various classifications covered by this agreement, in sufficient number as may be necessary to properly perform work contracted for by the contractor, in the manner and under the conditions specified in this agreement. Men may be requested by name, and shall be referred, if the man requested has worked for the calling contractor within the past twelve (12) months in the jurisdiction of Local No. 107, unless employed elsewhere at the time of the request. The Union will maintain a register of all persons who desire work of any classification covered by this contract. *Such register shall be maintained without discrimination as to race, color or status of membership. Contractors agree that no person shall be employed on any job covered by this agreement except such persons as shall be referred from the register so maintained.* Provided further, however, that nothing in this contract shall prevent the employment by the contractor of nonregistered persons at any time when no men are available from the register so maintained. Available means reporting to work within eighteen (18) hours following request by the contractor."

Appendix pp. 3–4 (emphasis supplied.) A reading of that paragraph, especially

Sam Sexton, Jr., Fort Smith, Ark., for appellant.

Robert L. Jones, Jr., Jones, Gilbreath & Jones, Fort Smith, Ark., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

MATTHES, Chief Judge.

The question for decision presented by this appeal is whether a state is empowered by § 14(b) of the Taft Hartley Act, 29 U.S.C. § 164(b), to enact a "right-to-work law" prohibiting union

* Eastern District of Michigan, sitting by designation.

the emphasized portion, shows that on its face it creates an exclusive, but nondiscriminatory, hiring hall.

The complaint alleged that Kunco was refusing to adhere to paragraph ten and therefore prayed for injunctive relief and damages. Kunco moved to dismiss the complaint for failure to state a claim for which relief can be granted; Kunco's theory being the contractual provision is void under Arkansas' "right-to-work law," Ark.Const.Amd. 34; § 81–203 Ark. Stat., and that this law is valid under § 14(b). The district court, 344 F.Supp. 626, agreed with Kunco and dismissed the complaint. This appeal followed.

■ Section 14(b) of the Taft Hartley Act, 29 U.S.C. § 164(b), provides:

"(b) Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

This statute can best be described as an exception to the general rule that the federal government has preempted the field of labor relations regulation. *See, e. g.*, Retail Clerks Int'l v. Schermerhorn, 375 U.S. 96, 99–102, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). It makes "clear and unambiguous the purpose of Congress not to preempt the field . . . 'in this regard so as to deprive the states of their powers to prevent compulsory unionism.'" *Id.*, at 101, 101 n. 9, 84 S.Ct. at 221, *quoting* H.R.Rep.No.510, 80th Cong., 1st Sess., p. 60. Thus, the Key issue in this case is whether the hiring hall *sub judice* is a form of "compulsory unionism" which § 14(b) allows states to prohibit.

The Arkansas Supreme Court has apparently answered that question in the affirmative, holding that even nondiscriminatory hiring halls violate the state's "right-to-work law." That statute provides:

"No person, . . . corporation, . . . or labor organization shall enter into any contract to exclude from employment . . . persons who are not members of, or who *fail or refuse* to join, or *affiliate with,* a labor union . . . ."

§ 81–203 Ark.Stat. (emphasis supplied.) Reasoning that a union operated hiring hall, if exclusive, forces a worker "to affiliate with" the union merely by signing the hiring hall register, the Arkansas Court held that even nondiscriminatory exclusive hiring halls violate the Arkansas law. Kaiser v. Price-Fewell, Inc., 235 Ark. 295, 359 S.W.2d 449 (Ark.1962),[1] noted in 17 Ark.L.Rev. 98 (1962). The question here is whether § 14(b) authorizes that prohibition. We think it does not.

■ Section 14(b) does not empower states to ban all involuntary relationships between workers and unions. It merely allows the prohibition of "agreements requiring *membership* in a labor organization as a condition of employment . . . ." 29 U.S.C. § 164 (b) (emphasis supplied). A hiring hall which, though exclusive, does not require union membership does not violate the closed shop prohibition of § 8 (a)(3), Local 357, Int'l. Bhd. Teamsters v. NLRB, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961), and thus, *a fortiori*, it is not within the ambit of § 14(b). *Cf.*, Retail Clerks Int'l v. NLRB, 373 U.S. 746, 751–752, 83 S.Ct. 1461, 10

---

1. Appellant contends alternatively that the hiring hall *sub judice* is distinguishable from that in *Price-Fewell* because there the register was categorized and to achieve more lucrative categories a worker had to pass examinations prepared and administered by the union. Appellant contends the absence here of such "affiliation" distinguishes this case. However, because of the manner in which we decide the federal question in this case, we deem it unnecessary to decide the question of state statutory construction implicit in distinguishing *Price-Fewell.*

L.Ed.2d 678 (1963).[2] This is the view of two circuits which have squarely held that § 14(b) does not empower states to prohibit nondiscriminatory exclusive hiring halls. NLRB v. Tom Joyce Floors, Inc., 353 F.2d 768 (9th Cir. 1965); NLRB v. Houston Chapter, AGC, 349 F.2d 449 (5th Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). Of course, in both those cases the cause arose via unfair labor practice charges within the NLRB rather than a suit, as here, under § 301 (a) of the Act. However, the charge in both cases was refusal to bargain on a union demand for an exclusive, nondiscriminatory hiring hall; and the defense in each instance was that since there is no duty to bargain on an illegal demand, NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 360, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958) (Harlan concurring), there was no duty to bargain on this demand because, as here, the applicable and allegedly valid state "right-to-work law" had been judicially construed to prohibit even nondiscriminatory, exclusive hiring halls. Accordingly, the dispositive question in both those cases, as here, was whether § 14(b) authorized the state statutory prohibition. Thus, the cases are squarely in point.

In sum, a nondiscriminatory hiring hall, even if exclusive, does not compel union membership and is therefore not within the grant of power left to the states by § 14(b). Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

2. The district court was of the opinion that, because the Supreme Court denied certiorari in *Price-Fewell* subsequent to deciding *Teamsters*, the denial of certiorari "in effect held there was no preemption . . ." applicable here. Appendix at 29. That view, of course, is patently incorrect. "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923). "[A] denial of certiorari means only that, for one reason or another, . . . there were not four members of the Court who thought the case should be heard." Brown v. Allen, 344 U.S. 443, 492, 73 S.Ct. 397, 439, 97 L.Ed. 469 (1953) (Frankfurter concurring). *Accord*, United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L. Ed.2d 963 (1960); Maryland v. Baltimore Radio Show, 338 U.S. 912, 917–920, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (Frankfurter concurring).