**Carl MATHEWS, Plaintiff and Appellant,**

v.

**TWIN CITY CONSTRUCTION COMPANY, INC., a North Dakota corporation, and Iron Workers Local Union No. 184, a Union Labor Organization of Sioux City, Iowa, and Joe Doe, Defendants and Appellees.**

**No. 13370.**

Supreme Court of South Dakota.

Argued Sept. 29, 1981.

Decided Sept. 1, 1982.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for plaintiff and appellant.

William J. Srstka, Jr., of Duncan, Olinger, Srstka, Lovald & Robbennolt, P. C., Pierre, and Paul F. Richard, Fargo, for appellee Twin City Const. Co.

Robert O'Connor, Sioux Falls, and Harry H. Smith, Sioux City, for appellee Iron Workers Local Union No. 184.

WOLLMAN, Chief Justice.

This is an appeal from orders dismissing appellant's complaint. We reverse and remand.

In his complaint praying for general and punitive damages from appellees, Twin City Construction Company, Inc. (Company), and Iron Workers Local Union No. 184 (Union), appellant alleged that appellees had terminated his employment because of his non-membership in the union, in violation of the South Dakota right-to-work law (SDCL 60–8–3).[1] In granting the motion to dismiss, the trial court concluded that it was without jurisdiction to consider appellant's claim inasmuch as the activity complained of was within the exclusive jurisdiction of the National Labor Relations Board (NLRB).

According to the allegations in his complaint, appellant, a non-union worker, was hired by the Company to work at the Pierre Mall construction site in November 1979. Appellant worked into early 1980, when he was laid off when construction operations were suspended because of inclement weather. After being called back to work in March 1980, "on or about March 2, 1980 . . . [appellant] was advised by an agent and employee of Twin City that [his] employment had to be terminated, and that because of [his] non-membership in the defendant Union his services could no longer be used on said project." Appellant's complaint further alleged that "the defendant Union and defendant Twin City had an agreement which required membership in an [sic] union organization as a prerequisite to employment on the project . . . and as a result of the enforcement of said agreement by all of the defendants . . . defendants, jointly and severally, caused the employment of [appellant] by Twin City to be terminated because of his non-union status . . . ."

The basic principles of the labor law preemption doctrine were expressed by the United States Supreme Court in *San Diego Building Trades Council, Etc. v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775, 782 (1959):

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . .

See also *Sears, Roebuck & Co. v. San Diego Cty., Etc.*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Farmer v. United Broth. of C. & J. of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Amalgamated Ass'n of St., E. R. & M. C. Emp. v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Retail Clerks Int. Ass'n, L. 1625 v. Schermerhorn*, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (*Schermerhorn II*) (1963); and *Retail Clerks Inter. Ass'n v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (*Schermerhorn I*) (1963).

The trial court concluded that our decision in *Stricker v. Swift Bros. Const.*, 260 N.W.2d 500 (S.D.1977), required it to dismiss appellant's complaint. We believe that the trial court read our decision in *Stricker* too narrowly. *Stricker* held that because the complained of agreement between the employer and the union did not require membership in the union as a condition of employment but rather established a non-discriminatory hiring hall procedure of the type that may not be barred by a right-to-work law, the complaint alleged at most an individual instance of discriminatory discharge that fell within the jurisdiction of the NLRB under the preemption doctrine. In reaching this conclusion, the court recognized that pursuant to § 14(b) of the National Labor Relations Act and the United States Supreme Court's decision in *Schermerhorn II*, supra, states may prohibit agree-

---

1. SDCL 60 8-3 states:

No person shall be deprived of life, liberty, or property without due process of law. The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization. Violation of this section is a Class 2 misdemeanor.

ments requiring membership in a labor organization, or the functional equivalent thereof, as a condition of employment.

Section 14(b) of the National Labor Relations Act, 29 U.S.C.A. § 164(b), provides for an exception to the general rule stated in *San Diego Building Trades Council v. Garmon*, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, that, in the absence of an overriding state interest, courts must defer to the exclusive competence of the NLRB in cases in which the activity that is the subject matter of the litigation is arguably subject to the protection of § 7 or the prohibitions of § 8 of the National Labor Relations Act. It does not empower states to ban all involuntary relationships between workers and unions. It merely allows the prohibition of "agreements requiring *membership* in a labor organization as a condition of employment * * *." 29 U.S.C.A. § 164(b) (emphasis added). See also, *Laborers' International Union v. Kunco, Inc.*, 1973, 8 Cir., 472 F.2d 456, 458.

. . . .

The plaintiff relies on cases concluding that § 14(b) gives states the power to prohibit agency shop agreements. *Retail Clerks Local 1625 v. Schermerhorn*, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678; *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179. These cases are distinguishable because agency shop provisions have been held to be, for all practical purposes, compulsory unionism agreements. We do not believe an exclusive, nondiscriminatory hiring hall is tantamount to a compulsory unionism agreement and the Courts of Appeals' decisions cited supra are in accord.

**2.** The several kinds of union security agreements have been defined by the United States Supreme Court:

A "union shop" agreement provides that no one will be employed who does not join the union within a short time after being hired. An "agency shop" agreement generally provides that while employees do not have to join the union, they are required—usually after 30 days—to pay the union a sum equal to the union initiation fee and are obligated as well to make periodic payments to the union equal to the union dues (citation omit-

*Stricker v. Swift Bros. Const.*, supra, 260 N.W.2d at 503–504.

In ruling on the motion for summary judgment in *Stricker*, the trial court and this court had the benefit of deposition testimony and answers to interrogatories regarding the nature of the complained of agreement. Here, on appellees' motion to dismiss, we consider only the allegations in appellant's complaint that appellees had an agreement that required union membership as a prerequisite to employment. Appellees contend that the complaint alleges the existence of a closed shop agreement and thus states a claim cognizable only by the NLRB, *Walles v. Intern. Bro. of Electrical Wkrs.*, 252 N.W.2d 701 (Iowa 1977). We conclude, however, that accepting as true, as we must on a motion to dismiss, all facts properly pleaded, *Akron Savings Bank v. Charlson*, 83 S.D. 251, 158 N.W.2d 523 (1968), appellant's complaint states a cause of action based upon the existence of an agreement that is barred by the provisions of SDCL 60–8–3 and one that is thus within the jurisdiction of the courts of this state.[2] Whether appellant will succeed in proving these allegations is another matter, of course. We hold only that he should be given the opportunity to adduce that proof at a trial in our state courts. Accordingly, we reverse the orders appealed from and remand the case to the circuit court with directions to reinstate the complaint.

DUNN, MORGAN and HENDERSON, JJ., concur.

FOSHEIM, J., concurs specially.

ted). The "union shop" and "agency shop" varieties of "union security" agreements are to be distinguished from the "closed shop" agreement, barred by § 8(a)(3), which provides that the employer will hire no one who is not a member of the union at the time of hiring.

*Oil, Chemical & Atomic Workers, Etc. v. Mobil Oil*, 426 U.S. 407, 409, 96 S.Ct. 2140, 2141, 48 L.Ed.2d 736, 739–40 (1976) n. 1. Whether the agreement complained of by appellant in fact constitutes a "union shop" or an "agency shop" will depend upon the proof adduced.

FOSHEIM, Justice (concurring specially).

I fully agree with the majority opinion but feel that a better understanding of the background and operation of § 14(b) comes from these excerpts from the majority opinion of Mr. Justice Douglas in *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 102–03, 105, 84 S.Ct. 219, 221–22, 223, 11 L.Ed.2d 179 (1963).

> In light of the wording of § 14(b) and this legislative history, we conclude that Congress in 1947 did not deprive the States of any and all power to enforce their laws restricting the execution and enforcement of union-security agreements. Since it is plain that Congress left the States free to legislate in that field, we can only assume that it intended to leave unaffected the power to enforce those laws. Otherwise, the reservation which Senator Taft felt to be so critical would become empty and largely meaningless.
>
> ... Yet even if the union-security agreement clears all federal hurdles, the States by reason of § 14(b) have the final say and may outlaw it. There is thus conflict between state and federal law; but it is a conflict sanctioned by Congress with directions to give the right of way to state laws barring the execution and enforcement of union-security agreements. It is argued that if there is a violation of a state union-security law authorized by § 14(b), it is a federal unfair labor practice and that the federal remedy is the exclusive one. It is urged that that course is necessary if uniformity is to be achieved. But § 14(b) gives the States power to outlaw even a union-security agreement that passes muster by federal standards. Where Congress gives state policy that degree of overriding authority, we are reluctant to conclude that it is nonetheless enforceable by the federal agency in Washington.

\*     \*     \*     \*     \*     \*

> As a result of § 14(b), there will arise a wide variety of situations presenting problems of the accommodation of state and federal jurisdiction in the union-security field. As noted, *Algoma Plywood Co. v. Wisconsin Board, supra*,[1] upheld the right of a State to reinstate with back pay an employee discharged in violation of a state union-security law. On the other hand, picketing in order to get an employer to execute an agreement to hire all-union labor in violation of a state union-security statute lies exclusively in the federal domain (*Local Union 429 v. Farnsworth & Chambers Co.*, 353 U.S. 969 [77 S.Ct. 1056, 1 L.Ed.2d 1133] and *Local No. 438 v. Curry*, 371 U.S. 542 [83 S.Ct. 531, 9 L.Ed.2d 514] ), because state power, recognized by § 14(b), begins *only with actual negotiation and execution of the type of agreement described by § 14(b)*. Absent such an agreement, conduct arguably an unfair labor practice would be a matter for the National Labor Relations Board under *Garmon*. (Emphasis in original, footnote added.)

Accordingly the bottom line is whether appellant can sustain with proof the allegation, contained in paragraph III of his complaint, that there is a union-security agreement.

---

1. *Algoma Plywood Co. v. Wisconsin Board*, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691 (1949).